UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARLA L WELDER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-08-252 |
| | § | |
| ALICIA WELDER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is the defendant Sallie Mae, Inc.'s ("Sallie Mae") motion for summary judgment [Doc. # 20]. Sallie Mae seeks judgment on the plaintiff, Carla L. Welder's ("Welder"), claims under the Declaratory Judgment Act, the Fair Credit Report Act, and Texas negligence law. Having reviewed **the pending motion, the submissions of the parties, the pleadings, and the applicable law, the Court finds that Sallie Mae's motion should be granted**.

### I.   *Background*

This case involves a series of student loan applications in which the defendant, Alicia Welder allegedly listed her then mother-in-law, the plaintiff, as a co-borrower without the plaintiff's permission. Welder ultimately defaulted on the loans and Sallie Mae requested payment from the plaintiff.

On July 21, 2005, Sallie Mae received a loan application and promissory note, requesting a private signature student loan for Alicia Welder in the amount of $22,031.00 ("Loan 1"), with proceeds to be disbursed for her education at the University of Texas – Medical Branch ("UTMB"). The Loan 1 application identified Alicia Welder as the primary borrower and

contained her electronic signature.  The Loan 1 application also listed the plaintiff as the co-borrower for the loan and as well contained her electronic signature.

The Loan 1 application listed the plaintiff's address as:  14211 Arborcrest, Houston, Texas 77062.   On July 22, 2005, Sallie Mae mailed an approval letter for Loan 1 to the plaintiff at that address.  Another letter was sent to the plaintiff on July 26, 2005, advising that the loan had been disbursed directly to the school.  Also, included with the letter was a Truth in Lending Disclosure that provided information about Loan 1 and described the cancellation process.

On September 30, 2005, Sallie Mae received another loan application and promissory note, requesting a private signature student loan for Alicia Welder in the amount of $5,655.00, which was increased to $11,310.00 ("Loan 2").  The application identified Alicia Welder as the primary borrower and the plaintiff as the co-borrower for the loan.  Loan 2 contained an electronic signature for both Alicia Welder and the plaintiff.  The loan proceeds were to be disbursed for Alicia Welder's education at UTMB.  The plaintiff's address was again listed as 14211 Arborcrest.  On October 3, 2005, Sallie Mae mailed an approval letter for Loan 2.  On October 5, 2005, Sallie Mae sent a letter advising that the loan funds had been disbursed directly to the school, and included a Truth in Lending Disclosure.

In late-May 2006, Sallie Mae received automated consumer dispute verifications ("ACDV's") related to Loans 1 and 2 from Trans Union and Experian submitted by the plaintiff to which it responded in June 2006.  Nevertheless, Sallie Mae did not adjust any co-borrower information at that time because its records indicated that the plaintiff was, in fact, the co-borrower.  However, on August 18, Sallie Mae received a telephone call from the plaintiff asserting that she had not signed as a co-borrower on Loans 1 and 2.  As a response, Sallie Mae sent its standard fraud packet, referred to as an "ID Theft Affidavit," to the plaintiff at 6102

Seawall, #273, Galveston, TX 77551-2031.  Instructions in the packet advised the plaintiff as

follows:

> Please review the documentation you allegedly signed.  If after reviewing, you
> determine that you did not sign the promissory note, please complete the enclosed
> ID Theft Affidavit and return it to us along with the required documents, within
> 30 days form the date of this letter.  If the required documentation is not received,
> I will be unable to review of [sic] your allegation and I will consider this issue
> closed . . . .

*See* Zeccola Aff., at ¶ 22.  The ID Theft Affidavit also advised, in bold print: "**Failure to enclose**

**a copy of a police report will result in us taking no further action on your claim of identity**

**theft."**  The plaintiff received the packet from Sallie Mae, but decided not to return it.  On

August 29, Sallie Mae received confirmation from UTMB that Alicia Welder had, in fact,

received the funds disbursed on Loans 1 and 2.  Two weeks later, Sallie Mae sent the plaintiff a

letter, enclosing repayment schedules for Loans 1 and 2.  Additionally, Sallie Mae sent a letter to

the plaintiff notifying her that Sallie Mae was unable to continue researching her concern of

identity theft because it had not received the completed ID Theft Affidavit.  The letter further

provided that: "[u]pon receipt, Sallie Mae will thoroughly research your concerns.  Please be

aware, however, that you remain responsible for the loans until the full principal and interest has

been satisfied or a determination has been made that your are not responsible for repayment of

the debt."

On October 20, 2006, another letter was sent to the plaintiff informing her that, because

she had not returned the ID Theft Affidavit, Sallie Mae considered the issue closed.  Four months

passed and the plaintiff contacted Sallie Mae requesting another ID Theft Affidavit.  Sallie Mae

forwarded the packet to the plaintiff and informed her that it was providing an additional 14 days

for her return the ID Theft Affidavit.  Again, she did not return the affidavit.  Therefore, on April

9, 2007, Sallie Mae sent a letter to the plaintiff informing her that, because she had not returned the ID Theft Affidavit, the issue was considered closed.

On August 8, 2007, the plaintiff contacted Sallie Mae and requested yet a third ID Theft Affidavit, which was sent to her as well as telephone numbers to call that she might place a fraud alert on her credit file. On September 7, 2007, Sallie Mae notified the plaintiff that it was providing an additional 14 days for the plaintiff to return the ID Theft Affidavit. Within 14 days the plaintiff responded through her counsel. The following day, Sallie Mae sent a letter to the plaintiff's counsel advising that it could not proceed with the investigation of the plaintiff's claim because Sallie Mae had not received a law enforcement report. Thereafter, on October 8, 2007, Sallie Mae received another ID Theft Affidavit from the plaintiff's counsel, but, again, it did not include the law enforcement report.

Finally, on October 23, 2007, Sallie Mae informed the plaintiff's counsel that it had not received the required law enforcement report and that it could not resolve the issue without the report. On March 20, 2008, Sallie Mae received a police report regarding the plaintiff's identity theft allegation. On that same date, Sallie Mae sent a letter to the plaintiff advising her that Loans 1 and 2 had been removed from her name, and notified the Galveston Police Department that Sallie Mae was the victim of the alleged identity theft. The plaintiff admits she received this letter from Sallie Mae.

On April 10, 2008, Sallie Mae processed a Universal Data Form updating the credit reporting agency informing them that it could delete Loans 1 and 2 from the plaintiff's credit report. On April 23, 2008, Sallie Mae confirmed and advised the plaintiff by letter that Loans 1 and 2 were not reporting on the plaintiff's credit report. The plaintiff also received this letter from Sallie Mae. Nevertheless, on November 20, 2008, the plaintiff filed her suit in the 122nd

Judicial District Court of Galveston County, Texas, asserting claims against Sallie Mae under the Declaratory Judgment Act, the Fair Credit Reporting Act, and for negligence under state law. Sallie Mae removed the case, to this Court invoking this Court's subject matter jurisdiction. Although a summons and a complaint were served on the defendant, Alicia Welder, she has failed to answer.[1]

## II.     *Analysis*

### A.     *Standard of Review*

The court may grant summary judgment under FED. R. CIV. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact.  The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case.  If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).  When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position.  *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000).  If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999).  Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must

---

[11]  In a footnote to her response to Sallie Mae's motion for summary judgment, the plaintiff requests a default judgment be entered against Alicia Welder.  *See* Docket Entry No. 22, at n.2.  This is an inappropriate method to obtain the relief requested.  Thus, the plaintiff's request for default judgment must be denied without prejudice, subject to filing a proper motion.

Case 3:08-cv-00252 Document 30 Filed in TXSD on 05/14/10 Page 6 of 10

present specific and supported material facts, of significant probative value, to preclude summary

judgment.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986);

*International Ass'n  of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de*

*Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

     **B.**     ***Federal Declaratory Judgment Act***

The plaintiff seeks a declaratory judgment that "there exists no contract between she and

Sallie Mae, Inc., and that placing credit information on her credit reports is both unauthorized

and without justification.  The plaintiff seeks a declaration that the debts in question belong to

Alicia Welder.

The Declaratory Judgment Act provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  "The purpose of the Declaratory Judgment Act is to settle *actual*

*controversies* before they ripen into violations of law or breach of some contractual duty."

*Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1154 (5th Cir. 1993) (emphasis added).

In reaching its determination whether or not to exercise discretion to enter a declaratory

judgment, a district court must consider several factors:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would served the purposes of judicial economy; [and] (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*American Bankers Life Assur. Co. of Fla. v. Overton*, 128 Fed. Appx. 399, 402, (5th Cir. 2002) (citing *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 (5th Cir. 2003)). These factors are inapposite in this case. Here, the evidence reflects that there is no justiciable controversy pending between the plaintiff and Sallie Mae. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (whether there is an actual controversy is a consideration when determining whether or not to exercise discretion). As set forth above, prior to this case being filed, Sallie Mae removed the plaintiff's name as a debtor for Loans 1 and 2. Additionally, Sallie Mae changed its records and report to credit reporting agencies in April of 2008, following receipt of the plaintiff's ID Theft Affidavit and law enforcement report. Under these circumstances, the Court declines to exercise it discretion and, instead, grants summary judgment on behalf of Sallie Mae.

### C.      *Fair Credit Reporting Act*

The plaintiff also claims that Sallie Mae violated the Federal Credit Reporting Act ("FCRA") by failing to conduct an investigation and report the results to the credit reporting agency after receiving notice of the disputed information regarding the loans. Additionally, the plaintiff claims that, having obtained no signature or authorization from the plaintiff, Sallie Mae failed to modify, delete, or permanently block the reporting of disputed information which was inaccurate, incomplete, and not easily verifiable.

"The FCRA was enacted to combat abuses in the credit reporting industry by protecting individuals from inaccurate or arbitrary information in a consumer report." *Kretchmer v. Eveden, Inc.*, No. 09-10556, 2010 WL 1141527, at *3 (5th Cir. Mar. 12, 2010). Under the FCRA, a consumer reporting agency must give notice of a dispute to a furnisher of information within five business days from the time the consumer notifies the consumer reporting agency of

the dispute.  *See* 15 U.S.C. § 1681i(a)(2).  This notice is necessary to trigger the furnisher's

duties under § 1681s-2(b).  Although the Fifth Circuit has not yet directly addressed whether a

private right of action against a furnisher of information exists for violations of 15 U.S.C. §

1681s-2(b), it has noted in *dicta* that any liability for a violation of § 1681s-2(b) would not arise

unless the furnisher had been notified of an inaccuracy and failed to correct the error.  *See Young*

*v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639-640 (5th Cir. 2002).

In the case at bar, Sallie Mae is considered a "furnisher" under the FCRA.  Thus, any

private right of action that the plaintiff may have under § 1681s-2(b) would require proof that a

consumer reporting agency had notified Sallie Mae pursuant to § 1681i(a)(2).  Although the

plaintiff claims she contacted Trans Union and requested a "fraud alert," it is not the plaintiff's

contact with the credit reporting agency that is material.  Instead, it is the contact of a credit

reporting agency with Sallie Mae regarding a dispute lodged by the plaintiff that determines

whether a private right of action exists under the FCRA.  The plaintiff points to no evidence

demonstrating that Sallie Mae received notice of a dispute from a consumer reporting agency

within five days, as is required to trigger Sallie Mae's duties under § 1681s-2(b).  Because the

plaintiff has not satisfied the notice element with respect to Sallie Mae, her FCRA claims fail as

a matter of law.

**D.**     ***Negligence***

**Next, the plaintiff asserts that Sallie Mae "violated its own policy and took an**

**applicant over the internet without confirmation that the co-signor was actually the co-**

**signor."   She further alleges that Sallie Mae knew or should have known that this**

**procedure had a high probability of allowing fraud to occur.  She contends that because**

of Sallie Mae's negligent acts, she has suffered a loss of her credit status and suffered emotional distress.

Under Texas law, a negligence claim consists of four essential elements:  (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury.  *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000); *see also D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).  In Texas, proximate cause includes two elements—cause in fact and foreseeability.  *See id*.  "Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligence created."  *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997); *see D. Houston, Inc.*, 92 S.W.3d at 454.  In Texas, the statute of limitations for a negligence claim is two years.  *See Haidar v. Nortex Foundation Designs, Inc.*, 239 S.W.3d 924, 926 (Tex. App.—Dallas 2007, no writ); *see also* TEX. CIV. PRAC. & REM CODE ANN. § 16.003.

Here, the plaintiff clearly knew or had reason to know of her claims by August of 2006.  Indeed, she admits that she knew as early as August of 2006 that she was considered a co-borrower on Loans 1 and 2.  As evidenced by an e-mail between the plaintiff and her son, Duncan Welder, the plaintiff chose to wait to resolve her issues with Loans 1 and 2, rather than follow the procedure provided by Sallie Mae.  As reflected in the record, the plaintiff did not file her suit until November 20, 2008, over two years after discovering the alleged fraud committed by her then daughter-in-law, Alicia Welder.  Consequently, the plaintiff's negligence claim is untimely and barred by the applicable statute of limitations.

Even assuming, *arguendo*, that the plaintiff's negligence claim was timely, her claim fails because she has not established a duty owed or a breach of an alleged duty by Sallie Mae.   There is no evidence that Sallie Mae did not follow its own policies in accepting electronic signatures.   As such, the plaintiff's negligence claim fails as a matter of law.

The record also reflects that Sallie Mae removed this case from the 122nd Judicial District Court of Galveston County, Texas.   Because the Court no longer has federal question jurisdiction over the case, the case should be remanded to the state court pursuant to 28 U.S.C. § 1447(c).

III.    *Conclusion*

It is, therefore,

**ORDERED** that Sallie Mae's Motion for Summary Judgment is **GRANTED** and the plaintiff's claims against Sallie Mae are dismissed with prejudice. The case is **REMANDED** to the 122nd Judicial District Court of Galveston County, Texas.

SIGNED at Houston, Texas this 14th day of May, 2010.

_____
Kenneth M. Hoyt
United States District Judge